**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Andrew PAYNE, Defendant-Appellant.**

**No. 76–3743.**

United States Court of Appeals, Fifth Circuit.

July 7, 1977.

Rehearing Denied Aug. 30, 1977.

John E. Fitzgibbon, Laredo, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Rene J. Gonzalez, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Associate Judge,[*] and GEE, Circuit Judge.

[*] Associate Judge of the United States Court of Claims, sitting by designation.

1. 21 U.S.C. § 841(a)(1) provides:
   "§ 841. Prohibited acts A—Unlawful acts
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . . ."

2. A "Chekar" is a magnetic device, imbedded in the highway, which reacts to vehicles passing over it. Among the Chekar devices being

KUNZIG, Associate Judge:

This case comes to us on appeal from Andrew Payne's (defendant-appellant) conviction for violation of 21 U.S.C. § 841(a)(1)[1] (marijuana possession and intent to sell). The trial was held to Judge Robert J. O'Conor of the District Court for the Southern District of Texas, defendant having waived trial by jury. After denying defendant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the trial court convicted and sentenced defendant Payne to imprisonment for a term of five years, to be followed by a special parole term of three years. This appeal is taken solely on the ground that the trial judge erred in ruling on the motion to suppress. We affirm the decision below and uphold the conviction.

The facts are these: On the morning of April 14, 1976, two U.S. Border patrolmen on duty in Hebronville, Texas, received a signal on the Chekar[2] alerting them to the fact that a vehicle was approaching Hebronville from the south on Highway 1017. The patrolmen drove south and saw the approaching car, a Chevrolet El Camino camper and saw that, though it had no visible occupant other than the driver, it was riding low, that it had out-of-county license plates, and that the rear windows were blacked out. Making a U–turn, the patrolmen followed the El Camino and continued to observe it. They saw that the camper was erratically moving from side to side across the highway, that the camper was equipped with air shock absorbers,[3] and

monitored by these patrolmen was the one in the northbound lane of Texas Highway 1017.

3. Payne stopped at the intersection of Highways 1017 and 285. By stopping his vehicle, Payne afforded the Border patrolmen in their car, following his own, the vantage point to observe an air valve, by the El Camino's rear license plate, thus confirming the patrolmen's earlier supposition that Payne's vehicle was equipped with air shock absorbers. The El Camino camper proceeded left on Highway 285; the Border patrolmen's stop took place immediately thereafter.

that the camper handled as though it was heavily loaded.

After having thus followed the El Camino camper and having formed the suspicion that it was carrying illegal aliens, the Border Patrolmen stopped the vehicle to confirm the citizenship of its driver and to determine whether it contained illegal aliens. Upon approaching the vehicle, the Border Patrol Officer detected a strong odor of marijuana. A subsequent search of the vehicle turned up approximately 565 pounds of marijuana.

Both at the suppression hearing and now on appeal, Payne contends that the warrantless search was impermissible under the Fourth Amendment and that the marijuana which was seized should have been excluded from use at the trial. Appellant Payne, relying upon *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), asserts that the initial stop was nòt made on reasonable suspicion and that, since the initial stop was improper (so appellant maintains), the ensuing search, even if based on probable cause, must fail.

The Government also relies on *Brignoni-Ponce, supra,* urging the court that the totality of the circumstances here on the record does, indeed, support the initial stop based on the reasonable suspicion that illegal aliens were in the El Camino camper. The Government further asserts that, since the search and seizure was based on probable cause found after a lawful stop of a movable vehicle on the open road, the evidence was properly admitted by the trial judge.

■ The Supreme Court has held, in a case such as the one at bar, that a stop by the Border Patrol is justified only where there is a reasonable suspicion to believe that a law is being broken. The standard, involving something more than mere suspicion and less than probable cause, must be met by demonstrating articulable facts and drawing rational inferences therefrom. *Brignoni-Ponce, supra.* Said the Court:

Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant. See *Carroll v. United States,* 267 U.S. 132, 159–61, 45 S.Ct. 280, 69 L.Ed. 543 (1925); . . . . They also may consider information about recent illegal border crossings in the area. The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion. . . . Aspects of the vehicle itself may justify suspicion. For instance, officers say that certain station wagons, with large compartments for fold-down seats or spare tires, are frequently used for transporting concealed aliens. . . . The vehicle may appear to be heavily loaded, it may have an extraordinary number of passengers, or the officers may observe persons trying to hide. . . . The Government also points out that trained officers can recognize the characteristic appearance of persons who live in Mexico, relying on such factors as the mode of dress and haircut. . . . In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling. *Terry v. Ohio,* 392 U.S. [1], at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. (Citations and footnote omitted)

*United States v. Brignoni-Ponce,* 422 U.S. 873, 884–85, 95 S.Ct. 2574, 2582 (1974).

■ Here we have a situation where experienced Border Patrolmen saw a vehicle with out-of-county license plates that was moving erratically, in a bouncing motion, changing lanes; a vehicle that had blacked-out rear windows and heavy duty shock absorbers; that was riding low although only one occupant was visible; a vehicle, in short, which both looked and handled as though it were heavily loaded. These Bor-

der patrolmen were posted in proximity to the Border (some 70 miles from Mexico); they knew that Texas Highway 1017 was a road over which transporting of illegal aliens often took place, and they knew that air shock absorbers are installed on vehicles which carry heavy loads at high speeds. Knowing these facts and having observed the El Camino camper, the officers suspected that illegal aliens may have been in the vehicle. Such a conclusion, tied as it is to such specific facts as these, can hardly be considered unreasonable.

█ The particularized observations of the Border Patrol officers in this case, accustomed as they were to the pattern of illegal alien traffic in the vicinity of He-bronville, were enough to create a reasonable suspicion. We stress that it is the aggregate of the individual factors, no single one of which is conclusive, that leads us to this result. It is the totality of the circumstances here (including characteristics of the area, driver's erratic behavior, and suspicious aspects of the vehicle itself) which compels us to agree that the Border Patrol officers did reasonably assess these facts "in light of [their] experience in detecting illegal entry." *Brignoni-Ponce, supra* at 885, 95 S.Ct. at 2582.

Viewed in such a light, the present case is clearly distinguishable from those cases involving stops we have held impermissible as based upon vague, inarticulate suspicions. *See, e. g., United States v. Shields,* 534 F.2d 605 (5th Cir. 1976) (Night, no reason to believe car came from border); *United States v. Partner,* 527 F.2d 1337 (5th Cir. 1976) (Night); *United States v. Del Bosque,* 523 F.2d 1251 (5th Cir. 1975) (car's occupants of Mexican ancestry, no other reason to stop). *See also United States v. Montgomery,* No. 75–1715 (D.C.Cir., May 26, 1977) (police observation of a car circling the block and its driver looking around, no traffic violation observed).

Thus, on reasonable suspicion, the officers had the authority to stop the vehicle to determine the citizenship and immigration status of its occupant(s). Having legally stopped the vehicle, the officers had probable cause to search when they detected the odor of marijuana emanating from the interior of the vehicle. *United States v. Walker,* 522 F.2d 194 (5th Cir. 1975); *United States v. Coffey,* 520 F.2d 1103 (5th Cir. 1975); *United States v. Cantu,* 504 F.2d 387 (5th Cir. 1974). And, finally, having probable cause to believe that contraband was in a movable vehicle on the open road, a search and seizure without a warrant is justified. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Cantu, supra.*

█ In summary, where a vehicle is initially stopped, based on a reasonable and articulable suspicion that a law is being violated, then a subsequent search of the vehicle, based upon probable cause, is permissible under the Fourth Amendment. The stop which occurred here was proper and the subsequent search and seizure were valid. The evidence is admissible, and the motion to suppress was, therefore, properly denied.

Accordingly, the judgment of conviction entered by the District Court is affirmed.

AFFIRMED.