**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ramon GANDARA–NUNEZ,**
**Defendant-Appellant.**

No. 77–5143.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1977.

Robert R. Harris, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Frank B. Walker, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, GEWIN, and AINSWORTH, Circuit Judges.

PER CURIAM:

This is another case involving the validity of a border patrol stop and search. After a non-jury trial, Ramon Gandara-Nunez was found guilty of possession of marijuana with intent to distribute. 21 U.S.C. § 841(a)(1). We affirm.

At about 6:45 a. m. on November 13, 1976, Gandara-Nunez was driving west on Texas Highway 20, entering the town of Fabens. Fabens is a farming community, predominately Mexican-American, located about thirty miles southeast of El Paso. Texas Highway 20 runs through Fabens, roughly parallel to both the border and Interstate Highway 10. It lies about four miles north of the border, and two miles south of the Interstate Highway. There are ports of entry accessible from Highway 20, approximately six miles either east or west of Fabens.

Two marked Border Patrol cars were proceeding in the opposite direction on Highway 20, returning to their headquarters just outside of Fabens. Norris and Puzio, both experienced officers, were in the first car; their superior, Barber, was in the second car. As they passed Gandara-Nunez, they noticed that his car, a 1973 Mercury Brougham, was riding extremely low in the back. Norris testified that the rear bumper was only eight inches from the pavement. As Gandara-Nunez passed them, he accelerated. At Barber's suggestion, the first car made a u-turn and followed Gandara-Nunez. Norris testified that they had some difficulty catching up with him, because of his increased speed. Gandara-Nunez reached the town's only stoplight. He turned right, onto the road leading to Interstate 10. Then, he made an almost immediate left turn, onto a small

street with commercial and residential lots. Norris testified that Gandara-Nunez made the turn at high speed. The Border Patrol officers followed. Once on that street, they used their lights and siren to pull his car to a stop.

Norris left his car, and asked Gandara-Nunez about his citizenship. He replied that he was a Mexican national, but a resident alien. At Norris's request he produced his I-151 card, proof of his resident alien status. Norris then asked him what he had in the trunk. Gandara-Nunez replied that he had nothing in the trunk. The officer asked "Can I look?" The defendant reached into the car as if to remove the keys from the ignition. He turned back toward Norris, without the keys. The officer asked what the problem was. Gandara-Nunez admitted that he had marijuana in the trunk. He then opened the trunk, which contained 493 pounds of marijuana.

The validity of the stop must be judged under the standards set for roving border patrols by *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. There the Court held that the Border Patrol may stop cars when the officers:

"are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country."

422 U.S. at 884, 95 S.Ct. at 2582. The Court held that the reasonableness of such a stop was to be judged by the totality of the circumstances, but listed a number of factors to be considered: the illegal activity in the region, information known to the officers of border crossings in the area, the vehicle's appearance, the way in which the vehicle was driven, and the appearance of the driver or passengers. 422 U.S. at 884–85, 95 S.Ct. 2574.

Here, the car had a large trunk, was heavily loaded, and was being driven evasively. The first two grounds are complementary. The size of the trunk established that illegal aliens could have been secreted there. That the car was riding extremely

low in the rear suggested that aliens were hidden. *Brignoni-Ponce* mentions as a significant factor that a car is low in the rear, apparently from carrying a heavy load in the trunk. This factor has been relied upon in numerous decisions of this Court. *See, e. g., United States v. Payne*, 5 Cir. 1977, 555 F.2d 475; *United States v. Garza*, 5 Cir. 1976, 544 F.2d 222; *United States v. Walker*, 5 Cir. 1975, 522 F.2d 194.

The trial judge found that Gandara-Nunez was driving evasively. He accelerated when he passed the marked Border Patrol cars. He made a right turn, followed by a quick left turn at an unusually high speed. He turned onto a little used street.[1] Those driving tactics coupled with the apparent weight in the rear of the car justify a trained Border Patrol officer's suspicions.[2]

The defendant argues that the search of his trunk was without probable cause, and hence invalid. *Brignoni-Ponce* states that the officers' actions

> "must be 'reasonably related in scope to the justification for their initiation.' 392 U.S. [1], at 29, 88 S.Ct. [1868], at 1884, 20 L.Ed.2d 889 [*Terry v. Ohio*]. The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause."

422 U.S. at 881–82, 95 S.Ct. at 2580. Here Officer Norris asked Gandara-Nunez what was in his trunk, asking him "to explain [the] suspicious circumstances". No search was undertaken until after the defendant admitted that he had marijuana in the trunk. The officer's question, "Can I look?", was a request for an explanation, not a command. To hold otherwise would unduly limit the officer's ability to seek an explanation. Once possession of marijuana was admitted, the officer had probable cause for a search.

The judgment of the district court is AFFIRMED.

1. In oral argument it was asserted that Gandara-Nunez was going to his home, located just off the street where he stopped. The record does not support this statement. Even if it did, the officers could not know that he lived on that street. The evasive nature of his driving must be judged by their reasonable perceptions of it, not by his actual intent.

2. *United States v. Frisbie*, 5 Cir. 1977, 550 F.2d 335, is not to the contrary. The vehicle in that case was stopped on a little used highway because the sensors showed it had come from near the border. Although the truck was heavily loaded, that fact was not noticed until it was being waved to a stop. The Court held that use of this ground for the stop would be impermissible bootstrapping.

Both the trunk size and the heavy loading are particularly apt factors because neither relies solely on the testimony of the officers who made the stop. *Five hundred pounds in a trunk would make most cars sag.* The trunk size of a given model of car can be proved at trial.