**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Mario DE LEON–REYNA, Defendant–Appellee.**

No. 89–2157.

United States Court of Appeals, Fifth Circuit.

April 17, 1991.

---

Jeffery A. Babcock, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellant.

Timothy L. Jackson, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY, POLITZ, KING, JOHNSON, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:

Today we decide whether the district court erred in granting a defendant's motion to suppress evidence gathered following a warrantless investigatory stop—a stop made partly in good faith reliance on information that was inaccurate through police error. A panel of our Court affirmed the district court, concluding that the vehicle stop violated the defendant's Fourth Amendment rights and further holding that "negligent" police conduct truncated the good faith exception to the exclusionary rule. We now reconsider that decision en banc and reverse the district court.

I.

The facts are set forth in the panel opinion, 898 F.2d 486, to the extent that they are not recounted here. On December 6, 1988, United States Border Patrol Agent Ernesto Martinez (Martinez), during routine patrol duty, parked his marked car on farm-to-market road 2050—a known alternative route of drug and alien smugglers seeking to avoid nearby Border Patrol checkpoints.[1] During his surveillance, he noticed a welding truck heading south, approaching his position. He was immediate-

---

**1.** Martinez was approximately thirty to forty miles from the Mexican border. In his four years with the Border Patrol prior to the defendant's arrest, Agent Martinez himself had apprehended illegal aliens on FM 2050 on more than thirteen different occasions. FM 2050 is not well-traveled; only two other cars passed Agent Martinez in the hour and a half he was on duty before the defendant's truck appeared.

ly struck by the truck's want of welding equipment—there were no tanks, arc welders, or metal hoses present in the truck, unlike welding trucks he had previously seen and inspected in the area. Instead, this truck contained a stack of plywood bound by metal straps, indicating that all of the plywood had been loaded at one time. The truck, however, had no pallets or other objects to create the holes needed for a forklift to load the cargo. The driver, defendant De Leon–Reyna, appeared surprised and "scared" to see a Border Patrol agent. Furthermore, the truck bounced erratically and dragged a broken shock absorber, suggesting that the weight on the rear of the truck was very heavy. Agent Martinez also knew from reading a Border Patrol Intelligence Center reference book that stacks of plywood often concealed false compartments used for smuggling drugs and aliens.

Suspicious, Agent Martinez then radioed the truck's license plate number "WM–1438" to the dispatcher, who misunderstood him to say "WN–1438." The dispatcher acknowledged the message but owing to the error radioed back that the license check had revealed that the plates were issued to a 1973 Ford dump truck and not the 1982 Chevrolet welding truck that Agent Martinez was following.

Based on his observations and on the license check, Agent Martinez pulled the truck over. Agent Martinez inquired about the defendant's citizenship; and the defendant produced a resident alien card, volunteering that he was en route to a town down the road to do a construction job. When Agent Martinez asked the name of the town, however, the defendant replied that he had forgotten both it and the delivery address for the lumber. After additional questioning, Agent Martinez suspected that the defendant was lying. He asked permission to inspect the truck, and the defendant consented. Looking under the truck, Agent Martinez discovered a freshly welded, false compartment underneath its bed. After asking the defendant whether he knew if someone had tampered with the truck and receiving a negative response, he

asked the defendant to step out of the car and produce a copy of his title.

Upon examining the title, Agent Martinez realized that the license check may have been inaccurate because the title matched the license plate on the truck. He radioed the dispatcher to run a second check and then radioed a border patrol agent at the nearby Freer checkpoint station, asking him to bring a drug sniffing dog to determine whether or not a search of the false compartment was necessary. The second license check gave Agent Martinez the correct information. When the dog arrived, it alerted to the rear of the truck; Border Patrol agents later discovered over half a ton of cocaine in the false compartment.

The United States indicted De Leon–Reyna for possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He filed a motion to suppress the evidence, maintaining that Agent Martinez's initial stop was without a warrant or reasonable suspicion. During the district court's hearing on the motion to suppress, the dispatcher testified that it is her unit's policy to use code words for communicating license plate letters, although that policy is not always followed. In making his transmission on the occasion in question, Martinez did not use code words for the license plate letters.

The district court granted the motion to suppress, concluding

"that the Government cannot justify a stop based on erroneous information when the error is due to the negligence of its own employees. Once the putative false registration is removed from the picture, the remaining circumstances do not justify a stop,"

and that

"[t]he Court does not question the good faith of the officers who made this stop, but as yet there is no precedent extending a good-faith exception to erroneous factual information relied upon by officers in making a warrantless stop. The Court thus concludes that it has no other recourse but to grant the motion to suppress."

The panel affirmed the district court. It conceded that "if the registration information provided over the radio was correct, then sufficient foundation for a brief investigatory stop existed." *Id.* at 488. However, the panel noted that the government conceded that "Martinez was negligent for failing to follow proper radio procedures," and held that accordingly the registration information could be given no consideration whatever in determining whether there was an articulable, objective basis for the stop. *Id.* at 488–89. Concluding that the other circumstances did not justify the stop, the panel held that the stop violated defendant's Fourth Amendment rights. The panel then turned to "the good faith exception to the exclusionary rule," under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *United States v. Williams,* 622 F.2d 830, 840 (5th Cir.1980) (en banc), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). Although the panel recognized that "this circuit applies the [good faith] exception to warrantless searches," 898 F.2d at 491, it held that Martinez's negligent failure to follow his unit's code word policy precluded reliance on that exception, notwithstanding that "Martinez's mistake was made in good faith." *Id.*

## II.

We conclude that regardless of whether Martinez was negligent in failing to follow his unit's code word policy, his good faith reliance on the license report information, as forming a part of the total circumstances he evaluated in determining whether to stop the vehicle, was objectively reasonable, and that accordingly the district court and the panel erred in holding that this information could be given no consideration whatever in evaluating whether the stop was justified under the reasonable suspicion standard of *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).[2] For the same reason, we also conclude that the district court and the panel erred in holding that the failure to follow the code word policy precluded reliance on the good faith exception to the exclusionary rule.

In Fourth Amendment cases, the Supreme Court begins with the basic premise that, when examining whether an officer's judgment is objectively reasonable, "the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." *Cortez,* 101 S.Ct. at 695. The most recent affirmation of this principle is to be found in *Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), where the Supreme Court found no Fourth Amendment violation when police had made a warrantless search of an apartment based on their reasonable belief that they had a valid consent to do so, when in fact they did not. The officers in *Rodriguez,* had interviewed an assault complainant who referred to the defendant's apartment as "our apartment" and also possessed a key to the apartment. *Id.* 110 S.Ct. at 2797. Without further inquiry, the police searched the defendant's apartment and discovered substantial quantities of cocaine. *Id.* The officers never sought an arrest warrant or a search warrant and only later discovered that the complainant had no common authority over the apartment but in the past had been a somewhat infrequent visitor only. *Id.*

The Supreme Court held that—despite the officers' failure to obtain a warrant or to make further inquiries as to who had a possessory interest in the apartment—the search would be valid if the officers' belief that they had consent, in light of all the circumstances, was objectively reasonable. *See id.* at 2801. *See also Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

Similarly, the issue here is not whether Martinez should have followed his unit's

---

2. Considering "the totality of the circumstances . . . the detaining officers must have a particularized and objective basis for suspecting" that the vehicle stopped is engaged in criminal activity, *id.* at 695, although this need not rise to the level of affording probable cause for arrest or search. *Id.* at 697.

code word policy, but rather whether his good faith reliance on the license plate report, along with the other circumstances, in determining to stop the defendant's truck, was objectively reasonable. We do not view the code word policy as being constitutionally mandated or as establishing a constitutional minimum for reliability. Moreover, the policy plainly does not have the force of law, and there is nothing to suggest that it is even written, much less published. There is no showing that it is designed to do anything more than *enhance* the reliability of communications. However, this does not suggest that *all* communications otherwise received are *wholly* unreliable. Hypothetically, on a scale of 1 to 100, a code word initiated report might have a reliability factor of 85, and one where code words are not utilized a reliability factor of only 65. While such a disparity would support the advisability of a code word policy, it would not mean that a report received where the policy had not been followed is so unreliable that it may not reasonably be given any consideration whatever. Obviously, this is not an "all or nothing" proposition for those acting in good faith.

Under the totality of the facts and circumstances present here, an objective officer situated as was Martinez could have reasonably relied on the license plate report information. Officer Martinez testified that he got up close to the back of defendant's truck so that he could clearly see the tag and carefully spoke the letters and numbers into his radio transmitter. The experienced dispatcher—thirteen years on the job—obviously thought she understood the transmission. She made no request to Martinez to repeat what he had said or to use phonetics for letters. At the receiving end of the dispatcher's responsive transmission, Martinez had no basis for thinking she had had any problem in understanding the tag number as he gave it. The dispatcher testified that officers often did not follow the policy procedures when transmitting license plate numbers.[3]

We conclude that in this setting an objectively reasonable officer could properly rely on the license report information, notwithstanding that he knew it was obtained without the use of code words, as forming a part of the total circumstances to be evaluated in determining whether there existed the requisite reasonable suspicion to stop the vehicle. Accordingly, although the license plate information turned out to be erroneous, it nevertheless may not be disregarded in determining either the legality of the stop or the availability of the good faith exception.

### III.

 Under the good faith exception to the exclusionary rule, "evidence is not to be suppressed ... where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *Williams*, 622 F.2d at 840. In our Circuit, the good faith exception applies to warrantless arrests. *See id.* at 840 n. 1. The exclusionary rule is "neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered'" but rather "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect....'" *Leon*, 104 S.Ct. at 3412. The deterrent effect of the exclusionary rule must in turn be balanced with the "substantial social cost" the rule imposes. *Id.* In *Leon*, the Supreme Court noted that:

> "[p]articularly when law enforcement officers have acted in objective good faith or their *transgressions have been minor*, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." *Id.* (emphasis added).

 Concluding that the good faith exception applies to cases in which a police officer errs, but nevertheless maintains a good faith and objectively reasonable belief

---

**3.** There was no contrary evidence. The only evidence concerning the policy was the dispatcher's testimony.

that he has an adequate foundation to make a stop, we now examine whether Agent Martinez's concededly good faith belief was an objectively reasonable one. For the reasons previously stated, in making this determination we consider the license report information received by Martinez, albeit discounting it somewhat because he was charged with knowledge that it might not be as reliable as it would have been if the code word policy had been followed.

The Supreme Court has stated that "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that a vehicle harbors contraband. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (discussing searches for illegal aliens); *see also Cortez,* 101 S.Ct. at 695–97.

Here we determine that it was objectively reasonable for an officer in Agent Martinez's position to conclude that under all the circumstances there was a particularized and objective basis for reasonable suspicion that defendant's vehicle was engaged in criminal activity—in other words, that a stop of the vehicle was lawful under the standards of *Cortez* and *Brignoni–Ponce.* Martinez's decision to pull the truck over—including his good faith reliance on the license plate information— was not unreasonable in the face of all of the surrounding circumstances: the road's common use by drug traffickers and close proximity to the border; the Border Patrol reference manual warning of smuggling efforts via false compartments in plywood cargo; the incongruity of the truck and the cargo it carried; and his evaluation of the circumstances and defendant's conduct, based on four years of experience in the same area of Texas.[4] His reliance on the license plate check is all the more unexceptionable given the district court's acknowledgement that a "license plate switcheroo" is not uncommon in smuggling cases.

Indeed, we are inclined to believe that the stop of defendant's vehicle fully complied with the *Cortez* standard and was hence lawful. But even if we were to ultimately conclude that the circumstances fall marginally short of *Cortez*'s requirements, nevertheless it is abundantly clear that it would have been objectively reasonable for an experienced, well-trained police officer in this setting to conclude that those requirements were satisfied and that the stop was hence legal. *Cf. Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039–41, 97 L.Ed.2d 523 (1987). Accordingly, the "good faith" exception to the exclusionary rule is applicable, and the district court erred in granting the motion to suppress.[5]

### Conclusion

Agent Martinez's failure to comply with his unit's code word policy is not of itself the determinative issue in this case, nor is the question of whether in some sense or for some purpose that failure may be characterized as negligent. And, it is not determinative that the license plate information ultimately turned out to be wrong, just as it is not determinative that Agent Martinez's suspicion ultimately turned out to be well founded. What *is* determinative is that it was objectively reasonable for an

---

**4.** All of the foregoing are valid considerations for making an investigatory stop. *See Brignoni–Ponce,* 95 S.Ct. at 2582. (The close proximity to the border, the traffic on the particular road, information and experience available to the officer, the driver's behavior, aspects of the vehicle itself—are all relevant factors in detecting illegal smuggling.)

**5.** By ultimately resolving this case on the *Leon–Williams* exception to the exclusionary rule, without determining that the stop violated the Fourth Amendment (indeed, as indicated, we conclude it likely did not), we do not imply that the district courts usually should not (or

should) first resolve the substantive Fourth Amendment issue. Where there is an important unresolved substantive issue under the Fourth Amendment, it may often be preferable to reach that issue first, and only proceed to *Leon–Williams* if the substantive issue is resolved against the validity of the challenged action (*see Leon,* 104 S.Ct. at 3421–22); whether or not it is also appropriate to proceed in that (or the opposite) fashion more generally, or whether the order of proceeding is better addressed on a case by case basis (*cf. Leon,* 104 S.Ct. at 3421), we leave till another day.

experienced officer in Martinez's position to take the license plate information into account as forming part of the total circumstances to be evaluated and relied on in determining that there was reasonable suspicion to stop the vehicle, and that in doing so Martinez acted in good faith. This being the case, the license plate information relayed to Martinez may not be wholly disregarded, but on the contrary must be taken into account (albeit discounted somewhat for lessened reliability attendant on the means of communication employed), in judging both whether the stop was indeed lawful and also whether, for purposes of the good faith exception, it would be objectively reasonable for a similarly situated, experienced officer to conclude that the stop was lawful. Taking the license plate information thus into account, we hold that it would be objectively reasonable for an experienced officer, situated as was Martinez, to conclude that there was adequate reasonable suspicion under the *Cortez* standard and that it was hence lawful to stop the vehicle. Thus, the good faith exception to the exclusionary rule is applicable and the evidence should not have been suppressed.

The district court's order granting defendant's motion to suppress is reversed and the cause is remanded.

REVERSED and REMANDED.

KING, Circuit Judge, concurring in the judgment:

As Judge Thornberry's thoughtful dissent points out, the rationale employed by the majority to reach the conclusion that the good faith exception to the exclusionary rule applies in this case also supports the conclusion that the stop in this case met the "reasonableness" requirement of the fourth amendment, and I would decide the case on the latter basis. The Supreme Court's cases on the good faith exception to the exclusionary rule (which post-date our *Williams* decision) feature an external

source, e.g., a warrant or a statute, on which the officer could rely. Because it is unnecessary to do so in this case, I see no need to extend those cases to the stop at issue here, which does not contain such a source. I therefore concur in the judgment.

THORNBERRY, Circuit Judge, with whom JOHNSON, Circuit Judge, joins dissenting.

Officer Ernie Martinez negligently transmitted a vehicle's license plate number, received an erroneous registration report because of his negligence, and then stopped the vehicle partially because of the erroneous registration information. The majority holds that the district court erred in refusing to include the registration information as a factor in determining whether Officer Martinez had a reasonable suspicion that the welding truck was transporting narcotics, but then pretermits the legality of the stop and applies the good faith exception to the exclusionary rule to hold that the district court erred in suppressing the cocaine which was discovered in the truck. My objection to both holdings is identical: erroneous information created by the negligent conduct of a law enforcement officer cannot be used to support a finding that the officer acted reasonably. Therefore, I respectfully dissent.

I.

To better comprehend my position and the position of the majority, it is helpful to understand the genesis of this appeal. At issue is the suppression of 1200 pounds of cocaine. Nevertheless, from the beginning, this case has been poorly prosecuted by the government.[1] The district court found that Officer Martinez acted negligently when he transmitted the welding truck's license plate number because he did not use a word designation for the letters on the plate.[2] *See* District Court Memoran-

---

1. After the panel issued its original opinion affirming the suppression of the evidence, the government did not file a petition for rehearing.

2. The district court's determination that Officer Martinez was negligent is a finding of fact, which cannot be disturbed unless it is clearly erroneous. *See In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985,* 919 F.2d 1079,

dum and Order at 2, Record on Appeal, vol. 1, tab 16. Rather than appeal the finding that Officer Martinez's conduct was negligent, the government conceded it. *See* En Banc Brief for the United States at 25.

The majority repeatedly attempts to slip out of the "negligence" label to which the government has yoked it. Its first tactic is to ignore the finding of negligence and focus on the word designation policy itself, arguing that the "code word policy [is not] constitutionally mandated," "does not have the force of law," and "is [not] even written, much less published." *See* Majority Opinion at p. 400. Then, without any foundation in the record, it disparages transmissions in which word designations are used, hypothesizing them to be only eighty-five percent reliable and only twenty percent more reliable than transmissions in which the word designations are not used. *See id.* These arguments are specious. The codification and reliability of the border patrol's communication policy are only relevant in determining whether Officer Martinez was negligent when he failed to follow that policy. The government conceded that he was. Therefore, because we must accept the finding that Martinez was acting unreasonably when he neglected to use the word designation policy, the fourth amendment and the good faith exception required him to follow that policy.

The second tactic that the majority uses to throw off the negligence yoke is to sur-

reptitiously challenge its factual constitution: Officer Martinez "got up close to the back of" the truck and "carefully spoke the letters and numbers into his radio"; the dispatcher with thirteen years of experience thought that she understood the transmission, and Martinez had no reason to believe that she had not understood it; and "officers often did not follow the policy procedures when transmitting license plate numbers." [3] *See id.* at p. 400. But the reasonableness of the officer's decision not to use word designations for the letters is not an issue on appeal; the district court found, and the government conceded, that a reasonable officer in Martinez's position *would have* used word designations.

The second inexplicable blunder by the government was to tie the suppression of 1200 pounds of cocaine to the fate of the license registration report. As the majority points out, a number of peculiar things about the truck aroused Officer Martinez's suspicions before he ran a check on the truck's license plates. First, smugglers frequently used the road on which the truck was traveling, FM 2050, to avoid a border patrol checkpoint.[4] Second, the welding truck did not have welding equipment in it but was filled with plywood, and Officer Martinez had read training manuals which indicated that plywood was often used to create hidden compartments for smuggling drugs.[5] Third, the defendant,

1085 (5th Cir.1991). The dispatcher testified that proper police policy was to use word designations so that similar sounding letters would not be confused. *See* Record on Appeal, vol. 2, at 78. She also testified that communication in the area where Officer Martinez was following De Leon–Reyna is particularly difficult. *See id.* Therefore, the district court's finding is not clearly erroneous.

**3.** That other officers failed to follow the word designation policy would not shield Officer Martinez from negligence. *See, e.g., Helling v. Carey,* 83 Wash.2d 514, 519 P.2d 981, 983 (1974) (en banc) (holding that defendants, ophthalmologists, were negligent as a matter of law for failing to administer a glaucoma test to a patient under age forty even though it was the practice of ophthalmologists never to test for glaucoma in patients younger than forty because only one in 25,000 of such patients would suffer from the disease).

**4.** *Compare United States v. Ortega–Serrano,* 788 F.2d 299, 301–02 (5th Cir.1986) (holding that immigration agents did not have reasonable suspicion to stop a car driving between Fort Worth and Dallas because there was no testimony that the area was commonly used for smuggling or that this type of car was often used for smuggling).

**5.** *See United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 695–96, 66 L.Ed.2d 621 (1981) (noting that "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion"). *See also United States v. Sokolow,* 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (holding that law enforcement agent could form a reasonable suspicion based on observation that defendant's conduct was consistent with a "drug courier

Mario De Leon–Reyna, appeared nervous and became rigid when he passed Martinez's marked patrol car; he did not acknowledge Martinez's presence as residents of that area usually did. Finally, after pulling behind the truck, Officer Martinez noticed that it appeared to be carrying a very heavy load, that it was bouncing erratically, and that it was dragging a shock absorber.[6] Considering the low threshold for the kinds of observations that will justify an investigatory stop near the border, Officer Martinez may have had sufficient reason to stop the truck even without the erroneous license plate information.[7] See United States v. Muniz–Ortega,

858 F.2d 258, 260 (5th Cir.1988) (holding that border patrol agent had reasonable suspicion to stop a flat-bed truck near the border after noticing mud on the tires and lower parts of the truck, seeing the driver look at him and then immediately turn his head back toward the road, and noticing debris and scratches on the truck).[8]

But the government never attempted to argue that the circumstances apart from the registration information justified an investigatory stop. See United States v. De Leon–Reyna, 898 F.2d 486, 488–89 (1990), rev'd, 930 F.2d 396 (5th Cir.1991) (en banc). The majority overcomes the government's carelessness through a sophistic use of the

**6.** See United States v. Lopez–Gonzalez, 916 F.2d 1011, 1015 (5th Cir.1990) (holding "that the fact that a vehicle appears to be heavily loaded is a factor that may properly weigh in favor of justification for a stop" (emphasis in original)).

**7.** If Martinez's observations, by themselves, would have made a reasonable person with his four years of experience suspicious that the welding truck was engaged in illegal activity, he did not violate the fourth amendment when he stopped De Leon–Reyna's truck. See Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585. This is true even if Officer Martinez testified that he would not have stopped the truck had he not received the erroneous information from the dispatcher. Courts use an objective touchstone to verify "reasonableness." See Illinois v. Rodriguez, —— U.S. ——, 110 S.Ct. 2793, 2800 n. *, 111 L.Ed.2d 148 (1990); Illinois v. Krull, 480 U.S. 340, 355, 107 S.Ct. 1160, 1170, 94 L.Ed.2d 364 (1987). What Officer Martinez actually would have done once he acquired enough information to cross the fourth amendment's threshold of "reasonable suspicion" is irrelevant.

**8.** See, e.g., United States v. Brignoni–Ponce, 422 U.S. 873, 885–86, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (listing some of the observations that may enkindle an officer's legitimate suspicions, including the "characteristics of the area in which [he] encounter[s] a vehicle," "[i]ts proximity to the border," the amount of traffic on

profile"); Florida v. Royer, 460 U.S. 491, 493 & n. 2, 502, 103 S.Ct. 1319, 1322 & n. 2, 1326, 75 L.Ed.2d 229 (1983) (holding that police officers had reasonable suspicion to detain an airline passenger whose characteristics fit "drug courier profile"); United States v. Hanson, 801 F.2d 757, 761–62 (5th Cir.1986) (reviewing officers' observations of defendant, which matched "drug courier profile," and finding that officers had reasonable suspicion to detain defendant, but noting that the match between the profile and the characteristics of the defendant did not, by itself, create reasonable suspicion).

the road, the driver's behavior, whether the vehicle looks as though it may have a secret compartment, and whether the vehicle appears to be heavily loaded); United States v. Lopez, 911 F.2d 1006, 1009–10 (5th Cir.1990) (finding reasonable suspicion to stop a heavily loaded truck when border patrol agents intercepted CB communications which indicated that the truck was travelling with two other cars, and the driver of the truck decelerated when he saw the agents approach); United States v. Boruff, 909 F.2d 111, 117 (5th Cir.) (holding that border patrol agent who observed a car and a pickup truck traveling at the same speed, at approximately the same distance apart, on two consecutive days, and who observed the driver of the car communicating with the driver of the pickup, had reasonable suspicion to stop the car after the pickup was found to be smuggling marijuana), petition for cert. denied, —— U.S. ——, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991); United States v. Kohler, 836 F.2d 885, 888 (5th Cir.1988) (finding reasonable suspicion to stop a heavily loaded motor home near the border after park rangers had observed changes in the motor home and its driver); United States v. Gordon, 712 F.2d 110, 113 (5th Cir.1983) (holding that border patrol agents who observed an unfamiliar truck with a ·compartment underneath the bed had reasonable suspicion to stop the truck); United States v. Gandara–Nunez, 564 F.2d 693, 694–95 (5th Cir.1977) (holding that border patrol agents were justified in stopping a car which had a large trunk, was heavily loaded, and appeared to be evading marked border patrol cars by accelerating and then turning onto a small street). Cf. Alabama v. White, —— U.S. ——, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990) (holding that police had reasonable suspicion to stop a woman's car based on an anonymous tip which accurately predicted that the woman would be leaving a particular apartment at a specific time and would be going to a particular motel, and which stated that the woman would be in possession of cocaine).

"totality of the circumstances" test of *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981): if one considers the other suspicious activity that Officer Martinez perceived, he was reasonable in relying on the erroneous registration report, even though it was the product of his negligent conduct. *See* Majority Opinion at p. 400. Officer Martinez's conduct was "negligent," however, only if he failed to act as a reasonable person would *under similar circumstances. See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 32, at 175 (Lawyer's 5th ed. 1984). Thus, the district court already considered the "totality of the circumstances" and concluded that Officer Martinez was negligent. Moreover, as I will explain below, the "totality of the circumstances" cannot be used to produce "reasonable reliance" from "unreasonable behavior."

Therefore, despite its obfuscation, the majority is defending the following proposition: that information obtained through unreasonable means can make a law enforcement officer's suspicions, or his "good faith" belief about those suspicions, more reasonable.

## II.

### A. The Good Faith Exception

The "good faith" exception is a misnomer. The key to determining whether the exception applies is not whether the officer acted in "good faith" but whether the officer's actions were objectively reasonable. *See United States v. Leon,* 468 U.S. 897, 924, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984) (noting that the good faith exception

turns on objective reasonableness). Officer Martinez's *conduct* in failing to use the word designations was negligent and, therefore, not objectively reasonable.[9]

The majority attempts to separate Martinez's conduct from his state of mind by arguing that Martinez did not have to be objectively reasonable in *acquiring* the information as long as he was objectively reasonable in *believing* the information after he received it. This premise makes no sense, however, when one considers that the purpose of the exclusionary rule is to affect the future conduct of law enforcement officers. *See id.* at 920, 104 S.Ct. at 3420. *See also Horton v. California,* —— U.S. ——, 110 S.Ct. 2301, 2308–09, 110 L.Ed.2d 112 (1990) (noting that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer").

The Supreme Court has consistently said that one of the purposes of the exclusionary rule is to deter negligent conduct by law enforcement officers. It has done so by reiterating the statement, first made in *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974), that "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, *or at the very least negligent, conduct* which has deprived the defendant of some right" (emphasis added).[10] Furthermore, in every case in which the Court has allowed evidence to be admitted under either the good faith exception or the fourth amendment, it has found every aspect of the law enforcement agents' conduct to be objectively reasonable.[11] Therefore, if an officer forms

---

**9.** *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser & Keeton on Torts* § 32, at 174–75 (Lawyer's 5th ed. 1984) (explaining that one's conduct is negligent if one fails to act as a reasonable person would in a similar situation).

**10.** *See, e.g., Maine v. Moulton,* 474 U.S. 159, 191–92, 106 S.Ct. 477, 495, 88 L.Ed.2d 481 (1985) (Burger, C.J., dissenting); *Leon,* 468 U.S. at 919, 104 S.Ct. at 3418; *Illinois v. Gates,* 462 U.S. 213, 260, 103 S.Ct. 2317, 2344, 76 L.Ed.2d 527 (1983); *United States v. Peltier,* 422 U.S. 531, 539, 95

S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975); *Brown v. Illinois,* 422 U.S. 590, 612, 95 S.Ct. 2254, 2266, 45 L.Ed.2d 416 (1975) (Powell, J., concurring).

**11.** *See, e.g., Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990) (holding that the fourth amendment is not violated if police officers reasonably believe that they have consent to enter the premises); *Maryland v. Garrison,* 480 U.S. 79, 88, 107 S.Ct. 1013, 1019, 94 L.Ed.2d 72 (1987) (holding that the validity of a search based on a warrant that is

his belief based on information generated by his own actions, both his actions and his belief must be reasonable. The Supreme Court so noted in *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the companion case to *Leon.*

In *Sheppard,* police discovered a woman's badly burned body in a vacant lot and suspected Osborne Sheppard, one of her boyfriends, of having killed her. *See id.* at 984, 104 S.Ct. at 3425. They wanted to obtain a warrant to search Sheppard's home, but it was Sunday, and all they could find was a form authorizing a search for controlled substances. Nevertheless, they filled this out and brought it to a magistrate. They told the magistrate about the problem, and he purported to correct it. *See id.* at 985–86, 104 S.Ct. at 3426–27. Under the auspices of the amended warrant, the police searched Sheppard's residence and found numerous incriminating pieces of evidence. *See id.* at 987 & n. 4, 104 S.Ct. at 3427 & n. 4.

At his trial, Sheppard moved to suppress the evidence, arguing that the "corrected" warrant still failed to conform to the fourth amendment because it did not adequately describe the things to be seized. The Supreme Court noted that the warrant was constitutionally defective, *see id.* at 988 n. 5, 104 S.Ct. at 3427 n. 5, but held that the evidence was admissible under the good faith exception.

> [T]he police conduct in this case clearly was objectively reasonable and largely error-free. An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to

punish the errors of magistrates and judges."

*Id.* at 990, 104 S.Ct. at 3429 (quoting *Illinois v. Gates,* 462 U.S. 213, 265, 103 S.Ct. 2317, 2346, 76 L.Ed.2d 527 (1983) (White, J., concurring)).

The good faith exception only applies if the law enforcement officer has *acted* reasonably. No doctrinal basis exists for bifurcating Martinez's actions from his state of mind.

### B. The "Reasonableness" Requirement of the Fourth Amendment and That of the Good Faith Exception

Although the majority holds that Officer Martinez could have based his suspicions about the welding truck on the erroneous registration information, it explicitly refuses to decide whether the stop violated the fourth amendment. *See* Majority Opinion at p. 401 n. 5. Rather, it reaches the conclusion that the good faith exception permits the cocaine to be admitted as evidence at De Leon–Reyna's trial.

The structure of the majority's analysis is curious for two reasons. First, as noted above, Officer Martinez's observations may have satisfied the fourth amendment even without the erroneous registration report. If, as the majority holds, we are permitted to add the erroneous report to those observations, the officer clearly had a reason to suspect that the truck was involved in criminal activity, and, therefore, the stop was legal.

Second, under the facts of this case, the fourth amendment is equipollent to the good faith exception, i.e., Officer Martinez could not have met the "reasonableness" requirement for the good faith exception without meeting the "reasonableness" requirement of the fourth amendment. Under the fourth amendment, Officer Mar-

---

too broad depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable); *Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971) (holding that police were reasonable in believing that the person whom they arrested was a robbery suspect whom they had probable cause to arrest, and, therefore, search incident to that arrest

was reasonable under the fourth amendment). *See also United States v. Williams,* 622 F.2d 830, 840 (5th Cir.1980) (en banc) (holding that the good faith exception applied when a narcotics agent reasonably believed that he had authority to arrest the defendant for violating a court order which required her to remain in Ohio), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981).

tinez was justified in stopping De Leon–Reyna if his suspicions were *reasonable;* the good faith exception applies if he was *reasonable* in believing that he had a *reasonable* suspicion to stop De Leon–Reyna. If a mistake is made by someone other than the law enforcement officer, it is possible for the officer to be reasonable in believing that he is justified in stopping a defendant even though the basis for his suspicions is not objectively reasonable, but when the officer is also the one who made the mistake, the "reasonableness" required by the good faith exception is identical to the reasonableness required by the fourth amendment. Adding a "good faith" analysis to a fourth amendment analysis contributes nothing but confusion. *Cf. United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) ("We think the Court of Appeals' effort to refine and elaborate the requirements of "reasonable suspicion" in this case create [sic] unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment.") Two cases illustrate this point: *Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) and *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

In *Illinois v. Rodriguez,* police officers searched the defendant's apartment after receiving the consent of a woman whom they mistakenly believed had common authority over the premises. *See* 110 S.Ct. at 2797. Because the police officers were the ones who acquired the information upon which they based their right to search the apartment, the issue was whether the officers' conduct had satisfied "the 'reasonableness' requirement of the Fourth Amendment." *See id.* at 2800. The Court held that the fourth amendment would be satisfied if the facts available to the officers would support an objectively *reasonable* belief that the woman had authority over the premises. *See id.* at 2801.[12]

In *Hill v. California,* police investigating a robbery had probable cause to arrest Hill. *See* 401 U.S. at 799, 91 S.Ct. at 1108.

They went to Hill's apartment, knocked on the door, and Miller opened it. The police arrested Miller, believing that he was Hill, and then searched the apartment, where they discovered a number of items that connected Hill to the robbery. Subsequently, Hill was prosecuted for the robbery, and he moved to suppress the items discovered in his apartment, arguing that police did not make a lawful arrest and, therefore, had no right to search the apartment. Noting that the arresting officers had probable cause to arrest Hill, and that they had a *reasonable* good faith belief that Miller was Hill, the Court held that "the arrest and subsequent search were reasonable and valid under the *Fourth Amendment.*" *See id.* at 802, 804–05, 91 S.Ct. at 1110, 1111 (emphasis added).

Therefore, because Officer Martinez made the mistake and also made the stop, if that mistake had been reasonable, as the majority asserts, the stop would have been legal under the fourth amendment. In fact, the majority's premise that there is a difference between its good faith exception and the fourth amendment is belied by the opinion itself. According to the majority, the fourth amendment is satisfied if Martinez's "good faith reliance on the license plate report, along with the other circumstances, in determining to stop the defendant's truck, was objectively reasonable." *See* Majority Opinion at p. 399. The good faith exception is satisfied if "under all the circumstances there was a particularized and objective basis for reasonable suspicion that [the] defendant's vehicle was engaged in criminal activity." *See id.* at p. 401. Under the facts of this case, I cannot discern a difference between these two tests.

The majority does use slightly different language to distinguish its analysis of the fourth amendment from its analysis of the good faith exception: Officer Martinez was reasonable in relying on the erroneous license information under the fourth amendment if we consider the "totality of the circumstances," but he was reasonable un-

---

**12.** The State court did not evaluate the reasonableness of the officers' belief, and, therefore, the case was remanded "for consideration of that question." *See Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).

der the good faith exception if we consider "all the circumstances." Regardless of semantics, my objection to both arguments is identical: if the registration information was procured through unreasonable means, it cannot be modified by other circumstances and used to justify the stop.

### C. A Reasonable Belief Cannot be the Product of Unreasonable Conduct Under Either the Fourth Amendment or the Good Faith Exception

As explained in Part II(A), the exclusionary rule requires that an officer's actions as well as his state of mind be objectively reasonable. In addition, the majority's attempt to use the "totality of the circumstances" in order to distinguish Martinez's actions from his state of mind is inherently illogical, whether it is done under the auspices of the fourth amendment or the exclusionary rule, because an actor's belief cannot be characterized as "reasonable" if it is grounded on facts produced by that actor's unreasonable conduct. *See Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (noting that the reasonableness standard requires "that the facts upon which an intrusion is based be capable of measurement against 'an objective standard' ").

The "totality of the circumstances" approach is quantitative: it permits a court to add together individual facts known to law enforcement officers to determine whether the officers had a reasonable basis for suspecting that someone was involved in a crime. For example, police may not have reasonable suspicion to detain someone based solely on an anonymous tip, but they could have reasonable suspicion if that tip was corroborated by independent investigation. *See Alabama v. White,* —— U.S. ——, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). The problem with the license regis-

tration report, however, is qualitative: it is tainted by negligence.

The majority disputes this: it argues that Officer Martinez's negligence simply diminishes the reliability of the report and, therefore, it should be discounted "somewhat." *See* Majority Opinion at p. 401. But again, the fallacy in this analysis is illustrated by the majority's own argument. If, as the majority asserts, the only reason for "discounting" the registration report is that it was twenty percent less reliable than if Officer Martinez had used word designations, why would not the license report itself justify the stop? Why modify it using the "additional circumstances"? After all, if a law enforcement officer is sixty-five percent sure that a vehicle is operating with stolen license plates, he certainly would be reasonable in stopping the vehicle and asking to see its registration.

The majority implicitly recognizes the qualitative defect of the registration report and does not attempt to defend its value independent of the other incriminating circumstances. Rather it asserts that Officer Martinez's "additional observations" made his tainted (unreasonable) reliance on the erroneous license plate information reasonable, and that we can then combine the converted "unreasonable" reliance on the license plate with those *same* "additional observations" and conclude that Officer Martinez had a "reasonable" belief that De Leon–Reyna was engaged in criminal activity. This type of reasoning is commonly disparaged with the epithet, bootstrapping.[13]

If we assume that Officer Martinez would not have been objectively reasonable in believing that he could stop De Leon–Reyna before receiving the erroneous registration information, adding an additional piece of information to the equation, obtained through unreasonable means, does not make his belief objectively reasonable.

---

**13.** To illustrate the bootstrapping problem, assume that both the license plate information and the "additional circumstances" are necessary for Officer Martinez to form the reasonable belief required by the good faith exception. Therefore, if each of these pieces of information had a mathematical value of "1," we would need

a "2" for the exception to be satisfied $(1 + 1)$. The problem is that the erroneous license plate information is worth "0," and $1 + 0$ does not equal 2. The majority argues that we can use the additional circumstances to change the 0 to a 1, or to a fraction of 1, but "$(1 \times 0) + 1$" still equals 1.

*See Leon,* 468 U.S. at 960, 104 S.Ct. at 3445–46 ("[A]n official search and seizure cannot be both 'unreasonabe' [sic] and 'reasonable' at the same time") (Stevens, J., concurring and dissenting). Both the good faith exception to the exclusionary rule and the fourth amendment require that the officer's actions be objectively reasonable. Consequently, neither can be used to admit the evidence in this case.

### III.

I understand the majority's reluctance to suppress 1200 pounds of cocaine because the arresting officer failed to properly transmit a license plate number. Nevertheless, the touchstone for admitting that evidence under the fourth amendment and under the good faith exception is "objective reasonableness." Here, the district court held and the government conceded that the officer was negligent and, therefore, by definition, unreasonable. Therefore, I do not believe that the registration information can be included as a factor in determining whether Officer Martinez had a reasonable suspicion that the welding truck was engaged in criminal activity or that the good faith exception can be used to admit this evidence, and I respectfully dissent.

POLITZ, Circuit Judge, dissenting:

I cannot join the majority for I cannot agree that there could be a good faith reliance by officer Martinez on information which, as factually found by the district court and conceded by the government, by definition was unreasonably acquired by the officer. If the posture of this case permitted, I would conclude that the officer's stop of the vehicle did not violate the fourth amendment. Because that resolution is not available, and because I cannot accord to the unreasonably acquired information the healing balm accorded by the majority, I must respectfully dissent. In doing so, I join much of what Brother Thornberry has written in his dissent.