UNITED STATES of America,
Plaintiff-Appellee,

v.

Cecilia Herrera GARZA,
Defendant-Appellant.

No. 76–2333
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1976.

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

C. David Evans, Allen F. Cazier, San Antonio, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Robert A. Berg, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

PER CURIAM:

Cecilia Herrera Garza appeals from a judgment of conviction of possession with intent to distribute approximately 550 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Garza contends that the stop and search of her car which revealed the marijuana were in violation of her Fourth Amendment rights. The stop and search of her car were however permissible, and accordingly we affirm.

On the morning of November 24, 1974, at about 2:00 a. m., Border Patrol officers Ruiz and Martinez were observing traffic at the intersection of U. S. Highway 59 and Texas Highway 16 in Freer, Texas. The intersection, which is controlled by a traffic signal, is approximately 60 miles from the Mexican border. Officer Ruiz saw two vehicles, a 1964 Ford and a 1969 Chrysler, approaching from the south on Highway 16. Using their binoculars, the officers observed what they considered to be a strange sequence of events. One vehicle stopped at the intersection, and the other pulled up beside it. Each vehicle had two occupants and each vehicle bore license plates containing letters which indicated the two vehicles were registered in the same county, perhaps the same city. Once the vehicles stopped, the occupants of both vehicles seemed to engage in conversation. At that point, the 1964 Ford, being in the proper lane to do so, made a righthand turn onto Highway 59 and the

appellant's vehicle, a 1969 Chrysler, also turned right from what would be considered the improper traffic lane. The officers considered these circumstances sufficiently suspicious to warrant an immigration check.

The officers followed the vehicles, but just as they were about to turn on their red light, the vehicles turned into a cafe parking lot. At this point, the officers noticed that the appellant's vehicle appeared to be heavily loaded. The appellant was already walking toward the restaurant when the officers pulled into the parking lot. Officer Ruiz approached the Chrysler, identified himself to the male passenger, and began to interrogate him as to his citizenship. Almost immediately he smelled the odor of marijuana. He called to the appellant and ordered her to open the trunk, which she did. The marijuana was then discovered.

■■■ *United States v. Brignoni-Ponce,*[1] 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed. 607, holds that reasonable suspicion is an insufficient justification for a warrantless search by roving border patrols which are not conducted at the border or its functional equivalents. Stopping a vehicle and briefly interrogating the occupants, however, when the officers on the roving patrol "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country", is permissible, 422 U.S. at 884, 95 S.Ct. at 2582.

The Court while explaining the basis of its decision also circumscribed the scope of permissible investigation incident to the stop by saying:

[B]ecause of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. As in *Terry,*[2] the stop and inquiry must be "reasonably related in scope to the justification for their initiation". 392 U.S. at 29, 88 S.Ct. at 1884. The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

422 U.S. at 881, 82, 95 S.Ct. at 2580. In order to effect the restrictions on permissible stops, the Court listed certain factors which would justify reasonable suspicion. Among those noted which are relevant here are "the driver's behavior" and the fact that the "vehicle may appear to be heavily loaded". 422 U.S. at 885, 95 S.Ct. at 2582. No single factor or set of factors is necessarily decisive, however, for as the Court points out, "[e]ach case must turn on the totality of the particular circumstances". 422 U.S. at 385, n. 10, 95 S.Ct. at 2582.

■■■ The officers here observed suspicious behavior by the occupants of the two vehicles. The hour was late; the two cars were travelling from the south; they appeared to be travelling together; and they turned together onto Highway 59, one from the incorrect lane.[3] This behavior together with the fact that the car appeared to be

1. *Brignoni* is applicable to the November 24, 1974 stop here by virtue of *United States v. Martinez,* 5 Cir. 1976, 526 F.2d 954.

2. *Terry v. Ohio,* 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889.

3. This point is not inconsistent with the fact that "Border Patrol agents have no part in enforcing laws that regulate highway use, and their activities have nothing to do with an in-

quiry whether motorists and their vehicles are entitled, by virtue of compliance with laws governing highway usage, to be upon the public highways", 422 U.S. at 883, n. 8, 95 S.Ct. at 2581. The turn from an incorrect lane is relevant not to show violation of traffic laws but to show peculiar driving patterns which support the officers suspicion that aliens might have entered the United States illegally. Naturally, as in the present case, the two may be related.

heavily loaded, indicating the possible presence of aliens being smuggled, provide a basis for a permissible stop.[4] The thrust of *Brignoni* is the prevention of arbitrary police action: "As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference, by law officers". 422 U.S. at 878, 95 S.Ct. at 2578. The stop here was not the result of a "lucky hunch" but was reasonably based on factors indicating illegal activity was afoot. *United States v. Walker*, 5 Cir. 1975, 522 F.2d 194; *United States v. Lara*, 5 Cir. 1975, 517 F.2d 209.

As the Court stated in *Brignoni*, the further search which led here to the discovery of the marijuana must be justified by probable cause or consent. 422 U.S. at 882, 95 S.Ct. 2574. The detection of the odor of marijuana constitutes probable cause and allowed the officers to search the vehicle. *See United States v. Walker*, 5 Cir. 1975, 522 F.2d 194, 196; *United States v. Santibanez*, 5 Cir. 1975, 517 F.2d 922, 923. As a result of the search, the marijuana was discovered. The motion to suppress was thus properly denied.

The judgment is AFFIRMED.

4. Although the circumstances here were such that the Border. Patrol did not have to actually stop Garza's car, there is no doubt that the vehicles would not have been allowed to leave without an inquiry as to the occupants' citizenship status. The requirements of *Brignoni* therefore remain applicable.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.