**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis A. PALLARES–PALLARES,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Onesimo Trevizo MENDOZA,
Defendant-Appellant.**

**Nos. 85–1607, 85–1608
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 10, 1986.

Lucien B. Cambell, Federal Public Defender, Elizabeth Rogers, Asst. Federal Public Defender, El Paso, Tex., for defendants-appellants.

Helen M. Eversberg, U.S. Atty., El Paso, Tex., Michael R. Hardy, Asst. U.S. Atty., San Antonio, Tex., James K. Blankinship, Midland, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Luis Pallares-Pallares and Onesimo Trevizo Mendoza were convicted upon their conditional guilty pleas to three counts of transporting undocumented aliens within the United States in violation of 8 U.S.C. § 1324(a)(2). Prior to entry of their guilty pleas appellants unsuccessfully moved for the suppression of evidence which they claimed was the fruit of unconstitutional stops of the vehicles they were driving. The guilty pleas were conditioned upon appellants retaining the right to appeal the denial of their suppression motion. Timely notices of appeal were filed.

### FACTUAL

The sole witness at the suppression hearing was border patrol agent Robert Smith. Smith testified that he had been a border patrol agent for more than 15 years and had worked in the Brewster County-Presidio County area in southern Texas since June of 1973. During that time he had principally patrolled daily along the Rio Grande and had apprehended thousands of undocumented aliens. Smith's testimony reflected that Brewster County had several unmanned ports of entry and was known as a locale frequently used by aliens and alien-smugglers for entry into the United States. Typically in a 30-day period, Smith stated that the border patrol cadre assigned to Brewster County would average between 150 and 200 arrests.

According to Smith, on July 4, 1985, the date that the appellants were stopped and arrested, he and fellow agent Lewis Reynolds were observing traffic in Brewster County on Highway 118, approximately 25 miles south of Alpine, Texas. Highway 118 runs essentially north and south, through rugged terrain, and connects Alpine and Study Butte, a small settlement on the edge of Big Bend National Park. No paved roads intersect Highway 118 in that area and there are no towns or other settlements. There is only one infrequently traveled dirt road which connects Highway 118 with Highway 365.

Smith had noted over the years that July 4 was a particularly heavy day for undocumented alien traffic. He attributed this to an apparent belief held by many aliens that the border patrol would not be working on July 4. In fact, on July 4, 1985, border patrol agents made several apprehensions of "loads," each consisting of 10 to 15 undocumented aliens.

Smith testified that the agents first observed appellants' vehicles traveling in tandem, separated by about 400 yards. When first noted, they were approximately 60 miles north of the Mexican border. The lead vehicle, driven by Trevizo, was an older model pickup truck with a camper shell, bearing Texas dealer license plates from another county. The second vehicle, driven by Pallares, was an older model 4-door sedan with New Mexico license plates. Smith testified that he observed four people riding in the truck's front seat, two people riding in the car's front seat, and that all riders appeared to be of Mexican descent. Smith said he could see nothing in the back of the camper unit, but both vehicles were riding low in the rear as if heavily loaded.

Based on his experience and observations, Smith testified that he reached the conclusion that the pickup truck and sedan were transporting loads of undocumented aliens. The agents followed and eventually stopped the trailing vehicle. After stopping the sedan, the agents discovered five previously unobserved passengers sit-

ting on the floorboards. Pallares and the six passengers all admitted to having entered the country illegally.

Smith testified that he then pursued and overtook the pickup truck 20 miles farther north. Trevizo and the three front-seat passengers all admitted to being undocumented aliens, as did ten riders discovered in the vehicle's camper compartment.

After the evidentiary hearing, the district court took the motion to suppress under advisement and subsequently entered an order stating its findings of fact and conclusions of law. The court identified the factors upon which its ruling was based:

1. Agent Smith, a 15–year veteran of the Border Patrol, had, since patrolling on the Fourth of July beginning in either 1978 or 1979, found that Independence Day for the United States was a day for heavy illegal alien or smuggling traffic;

2. the stop occurred on Highway 118 which runs through rugged terrain and which is not intersected by any paved east-west highway or road;

3. the stop occurred between Study Butte and Alpine, an area in which there are no towns or settlements;

4. the vehicles appeared heavily loaded in the rear and were only one quarter of a mile apart; and

5. the driver of the sedan continuously looked in his rear-view mirror to observe the border patrol agents.

### Analysis

■ An immigration agent on roving patrol may conduct a temporary vehicle stop for the limited purpose of investigating the citizenship of the occupants if he is aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the [vehicle contains] aliens who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (footnote omitted).

The agent may consider several objective factors in determining whether reasonable suspicion exists. These factors, elucidated in *Brignoni-Ponce*, include: (1) characteristics of the area in which the vehicle is encountered; (2) proximity to the border; (3) usual patterns of traffic on the particular road; (4) previous experience with alien traffic; (5) information about recent illegal crossings in the area; (6) behavior of the driver, as erratic driving or obvious attempts to evade officers; (7) appearance and aspects of the vehicle; and (8) number, appearance, and behavior of passengers. 422 U.S. at 884–85, 95 S.Ct. at 2581–82; *United States v. Lamas*, 608 F.2d 547 (5th Cir.1979). No one specific factor is controlling. Each case must turn on the totality of the particular circumstances and "the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *Brignoni-Ponce*, 422 U.S. at 885 & n. 10, 95 S.Ct. at 2582 & n. 10; *United States v. Pacheco*, 617 F.2d 84 (5th Cir.1980).

Under the *Brignoni-Ponce* test, "reason to believe that the vehicle had come from the border" is a vital element. Nevertheless, "the belief that the vehicle has crossed the border is not necessary if other factors constitute reasonable suspicion to stop the vehicle." *United States v. Henke*, 775 F.2d 641, 645 (5th Cir.1985). In such an instance, however, this court is "required to examine clearly the remaining facts marshaled by the government to support the agents' suspicions." *United States v. Pena-Cantu*, 639 F.2d 1228, 1229 (5th Cir.1981). *See also United States v. Salazar-Martinez*, 710 F.2d 1087 (5th Cir. 1983).

■ In the case now before the court, appellants' vehicles were stopped over 60 miles from the Mexican border. While Highway 118 connects with other roads which extend to the border, it originates at Study Butte and is frequently used by United States citizens traveling to Big Bend National Park. These factors could indicate that appellants' trip began either in Mexico or north of the border in this

country. Because the agents did not have an adequate basis for believing that the vehicles had recently crossed the border, consistent with the controlling precedent in this circuit, the remaining factors must be examined charily.

Viewing the totality of the circumstances, we find sufficient evidence to sustain the district court's decision. Agent Smith testified that the vehicles were riding low in the rear, as if heavily loaded, and were traveling together in close proximity, that Highway 118 in Brewster County is frequently used for smuggling of undocumented aliens, that in his experience July 4 was a day of heavy undocumented alien traffic, and that, when following the Pallares vehicle, he could see the driver frequently observing the officers in his rearview mirror. These factors taken together, and weighed in the crucible of the experience of the officer, are sufficient to raise the officer's suspicion to the point where a stop legally could be made.

For the foregoing reasons, the district court's ruling on the motion to suppress was correct. Accordingly, the appellants' convictions are AFFIRMED.