**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-50650

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JESUS RODRIGUEZ-RIVAS,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

August 17, 1998

Before POLITZ, Chief Judge, JONES, and DUHÉ, Circuit Judges

DUHÉ, Circuit Judge:

Following a bench trial, Jesus Rodriguez-Rivas ("Rodriguez") was convicted of conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. He appeals his conviction, arguing that the district court erred when it denied his motion to suppress and admitted evidence (over 700 pounds of marijuana and his contemporaneous statements) obtained when a Border Patrol agent stopped him without reasonable suspicion based on articulable facts. We agree. We find a Fourth Amendment violation and conclude that there were insufficient articulable

facts surrounding the Border Patrol's stop of Rodriguez's vehicle to satisfy the constitutional requirement of reasonable suspicion.

**I.**

While awaiting the arrival of his partner to open a Border Patrol checkpoint on U.S. Highway 385 south of Marathon, Texas, some fifty-plus miles from the border, agent Rodolfo J. Garcia ("Garcia") stopped a car with Mexican license plates. The veteran agent learned that the car's occupants were Mexican custom agents and were legally in this country. Because he knew that Mexican agents sometimes assist in narcotics smuggling, Garcia became even more alert to traffic.

Highway 385 is a main entrance to Big Bend National Park and is heavily traveled by tourists. It is also known to be a route preferred by drug smugglers, allowing them to by-pass the consistently manned immigration checkpoint on Highway 67. Ten to fifteen minutes after he had stopped the Mexican customs agents, Garcia saw a mini-van headed north. Although he had no radar to accurately record the mini-van's speed, he perceived it was traveling "at a high rate of speed." He noticed that the mini-van bore no front license plate and that the driver appeared to be slouched down in his seat. Becoming suspicious, Garcia u-turned and followed the mini-van. The mini-van had no rear license plate, only a San Antonio auto dealer's advertisement. Because he suspected something was amiss and had no way to verify the mini-

2

van's registration, Garcia stopped the vehicle for an immigration check.

Appellant Rodriguez, the sole occupant of the mini-van and a resident alien, lowered his window to present his papers. Garcia immediately smelled marijuana. From his position outside the van, Garcia saw that the center seat of the van had been removed and in its place was a large Mexican-style blanket covering something. He readily identified a cellophane-wrapped bundle not covered by the blanket as typical marijuana packaging. The agent arrested Rodriguez and read him in Spanish his <u>Miranda</u> rights, which Rodriguez waived.

In a brief, unsolicited conversation with Garcia, Rodriguez admitted that he had agreed to drive the van for two men he had met in Big Bend National Park. He told Garcia he had assumed he would be transporting illegal aliens. Garcia's partner arrived a short time after the arrest with a drug dog. The dog alerted to the presence of drugs and the Border Patrol agents seized 726 pounds of marijuana from the mini-van.

Rodriguez moved to suppress all evidence - his statements and the marijuana -claiming that the stop was an unreasonable seizure in violation of the Fourth Amendment. He did not argue lack of probable cause for his arrest and the subsequent search; he argued only that the evidence was the "fruit of a poisonous tree" and was therefore inadmissible. The district court denied his motion and found him guilty of both charges: possession with intent to

distribute marijuana and conspiracy to possess with intent to distribute marijuana. Rodriguez now appeals.

## II.

We review the denial of a motion to suppress under two standards. United States v. Inocencio, 40 F. 3d 716, 721 (5th Cir. 1994). We review de novo determinations of questions of law, such as whether reasonable suspicion existed to stop a vehicle. United States v. Nichols, 142 F.3d 857, 864 (5th Cir. 1998). Factual findings are reviewed for clear error. Id. Additionally, this court views evidence presented at a suppression hearing in the light most favorable to the prevailing party. Inocencio, 40 F. 3d at 721.

## III.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. This amendment, however, does not expressly preclude the use of evidence obtained in violation of its directive. Arizona v. Evans, 514 U.S. 1, 10 (1995). Preclusion is a judicially created remedy whose deterrent effect safeguards against future Fourth Amendment violations. United States v. Leon, 468 U.S. 897, 906 (1984). We apply this judicial exclusionary rule only where its remedial objectives are thought most effective. Id. at 908. Where "the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted." United States v. Janis, 428 U.S. 433, 454

4

(1976).

The Supreme Court has addressed this Fourth Amendment right directly with regard to investigatory stops by roving Border Patrol agents away from the border, such as we consider here. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Agents have authority to stop only when they "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." Id. at 884. The Supreme Court later clarified that the agents' suspicion may go beyond smuggling undocumented aliens and extend to a reasonable suspicion that the particular vehicle they stop is engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 421-22 (1981). By imposing the reasonable suspicion standard, the Supreme Court sought to avoid subjecting residents of the area under patrol to potentially unlimited interference with use of the highways, solely at the discretion of Border Patrol officers. Brignoni-Ponce, 422 US. at 882.

We are cautioned to take the totality of the circumstances into account when we make a determination of reasonable suspicion. Cortez, 449 U.S. at 417. No single factor is determinative, but each case must be assessed on the totality of the circumstances known by the agent and on the agent's experience in evaluating the circumstances. Inocencio, 40 F. 3d at 722. We receive guidance in this assessment from the factors identified in Brignoni-Ponce, 422

5

U.S. at 884-85.  These include:

> (1) known characteristics of a particular area,
> (2) previous experience of the arresting agents with criminal activity,
> (3) proximity of the area to the border,
> (4) usual traffic patterns of that road,
> (5) information about recent illegal trafficking in aliens or narcotics in the area,
> (6) behavior of the vehicle's driver,
> (7) appearance of the vehicle, and
> (8) number, appearance, and behavior of the passengers.

Under this test, if there is no reason to believe that the vehicle has come from the border, the remaining factors must be examined charily. United States v. Pallares-Pallares, 784 F. 2d 1231, 1233 (5th Cir. 1986).  When the stop occurs a substantial distance from the border, this element is missing. United States v. Melendez-Gonzalez, 727 F. 2d 407, 411 (5th Cir. 1984).  In Inocencio we determined that vehicles traveling more than 50 miles from the border are usually a "substantial distance" from the border.  Inocencio, 40 F. 3d at 722, n. 7 (internal quotes omitted).  A stop 60 miles from the Mexican border, we have found, was not near enough to the border to justify a belief that the vehicle originated from the border.  Melendez, 727 F. 2d at 411.

Because Rodriguez was stopped more than 50 miles from the border, we examine most carefully the remaining Brignoni-Ponce factors.  Even when we do so in a light most favorable to the prevailing party on the motion to dismiss, Inocencio, 40 F. 3d at 721, our review of the record demonstrates that, in the totality of

the circumstances, agent Garcia lacked sufficient articulable facts to satisfy the reasonable suspicion standard.[1]

The record reveals that U.S. Highway 385 is frequently used by smugglers in an attempt to avoid the regularly-manned checkpoint on U.S. Highway 67.  This fact was well-known to Garcia, who has arrested many drug and alien smugglers along that highway during his eight-plus year tenure with the Border Patrol.  He was also well-acquainted with the usual traffic in the area and could recognize many of the locals and the ranch and park employees, as well as the typical tourists who visit the park.  The highway, however, serves as the main entrance to a popular national park[2] where most visitors arrive by car.

Garcia's experience also familiarized him with the practice of the use of a lead car to warn a following vehicle carrying contraband of the presence of law enforcement officers.  He was aware that Mexican customs officials sometimes participated in this practice, and became more alert to passing traffic after he had stopped a vehicle occupied by such officials.  Nothing in the record, however, indicates that the customs officials could contact and warn another vehicle.  Garcia did not see a C.B. radio, a walkie-talkie, or a cellular phone in the officials' car.

From his Border Patrol work, Garcia also knew that smugglers

---

[1]See also United States v. Jones, 1998 WL 432635 (5th Cir. (Tex)).

[2]Judicial notice has been taken that in 1975 Big Bend National Park admitted some 331,000 visitors.

7

wait for a shift change to drive past a check point. Usually the stations are unmanned during this period; smugglers run a lesser risk of discovery when traveling at that time. Because Garcia's check point had not been consistently manned before the stop in question, we do not find the time of the stop particularly relevant in creating reasonable suspicion.

When Rodriguez's mini-van approached Garcia's marked Border Patrol vehicle, the agent was alerted to the possibility of criminal activity for several reasons. The mini-van appeared to Garcia to be traveling "at a high rate of speed," although the speed limit on U.S. Highway 385 is 70 miles per hour. A second reason Rodriguez raised agent Garcia's suspicion was his posture in the vehicle; he seemed to be slouched low in his seat. Garcia's experience was that this posture is typical for someone trying to avoid identification. We note, however, that Rodriguez was only 5'7" tall.

Coupling this posture with the possibility that the Mexican customs agents he had stopped some 15 minutes earlier could have been lookouts for a smuggler, Garcia attempted to identify the vehicle registration. He saw no front license plate on the mini-van, although Texas requires one. He then made a U-turn to follow the mini-van. Garcia saw that there was no rear license plate and no temporary tag; the mini-van displayed only an advertisement for a San Antonio auto dealer. Based on the foregoing events and his observations, Garcia suspected that the van could be carrying

illegal aliens.  Only then did he stop the mini-van to verify its registration and the driver's immigration status.

We recognize also, however, that U.S. Highway 385 serves as a major entrance to Big Bend National Park and that the record reveals no evidence of communication between the two vehicles Garcia stopped.  Although the lack of required vehicle tags is a factor to consider in determining the reasonableness of the stop, we note that the absence of Texas license plates alone does not authorize a Border Patrol agent to stop a vehicle.  Considering those facts, as well as Rodriguez' height and the absence of evidence of a speed limit violation, we find that, when viewed in the aggregate, the Border Patrol agent did not articulate facts clearly sufficient to create a reasonable suspicion that Rodriguez was engaged in illegal activity.[3]  Since we find that the stop of

---

[3]Garcia's testimony at the motion to suppress supports this finding.  At the time of this stop Garcia was under the impression that the appropriate standard was mere suspicion not reasonable suspicion.  Until he was corrected by the Assistant U.S. Attorney, this eight-year plus veteran agent testified to the following:

> The law states that we may stop any conveyance, any vehicle on mere suspicion that we suspect that there are illegal aliens on board.  That is the law that we operate on....

And when questioned by the court, "You say under your regulations, if you have a mere suspicion that a vehicle is being used for alien smuggling, you can stop it?", Garcia responded, "Oh, yes, sir... those are within the confines of the law.  That is how we operate."

Later, responding to the court's inquiry as to the need for probable cause or mere suspicion to make a stop, Garcia explained that "mere suspicion can vary from either one person or numerous persons, sir."  He characterized the mere suspicion that led him in

9

Rodriguez's mini-van was unlawful, the evidence obtained from the stop is the "fruit of a poisonous tree" and was improperly admitted.

### III.

Because we find error in the district court's denial of the motion to suppress, we reverse and vacate Rodriguez's conviction and remand.

REVERSED, CONVICTION VACATED AND REMANDED.

<span style="color:red">ENDRECORD</span>

---

this case to suspect Rodriguez of alien smuggling as the type of vehicle driven. But he then testified "we have apprehended alien [sic] smuggling loads in various vehicles. It can be small cars, large cars, old vans, new vans, ...just anything on wheels can be used to smuggle illegal aliens... There is no set profile."

EDITH H. JONES, Circuit Judge, dissenting:

A person might think that a drug smuggler should be featured on the TV program, "America's Dumbest Criminals", for transporting nearly a half ton of marijuana in a vehicle with no license tags. As it turns out, however, this drug smuggler may be among America's smartest criminals, because under today's ruling, he will be let go. Not only that, he should receive a reward from the other smugglers along the Rio Grande who will take this opinion to heart and also remove the license plates from their trucks and vans. I dissent.

Not to be misunderstood, I agree that a multi-factor test governs whether a border patrol agent had reasonable suspicion to justify stopping a vehicle near the border. United States v. Brignoni-Ponce, 422 U.S. 873, 884-85, 95 S. Ct. 2574, 2582 (1975); United States v. Inocencio, 40 F.3d 716, 722 (5th Cir. 1994). The majority have properly cited that test. In my view, the following factors[4] fulfill the reasonable suspicion test: Highway 385 emerges from Big Bend National Park and is a road regularly used by drug and alien smugglers to avoid the permanent border patrol checkpoint on Highway 67; the appellant was traveling around the time of the

---

[4] All of these factors are listed in the district court's careful opinion as grounds for reasonable suspicion except that the Mexican Customs' officials' car preceded appellants' van by 10-15 minutes.

11

shift change, when there was a higher probability that no one would be manning the checkpoint;[5] the driver was a Hispanic male; Agent Garcia had minutes before stopped Mexican customs agents who have been known to escort vehicles containing contraband; the driver was slouched in his seat, as, in the Agent's experience, people trying to avoid identification often are;[6] and, the driver was traveling at a perceived high speed.  Most important, there were no proper identifying license plates on appellant's van.

Although all of these factors were considered by Agent Garcia, what could be more telling than the lack of vehicle license plates?  Why would anyone emerging from the wilderness of Big Bend National Park fail to have license plates, unless to escape identification?  The majority attempts no innocent explanation for appellant's failure to have license plates; instead, the majority simply state that Agent Garcia had no authority, as a Border Patrol agent, to stop the driver for that traffic violation.  This is correct but irrelevant for two reasons.

---

[5]  The majority believe that the timing is irrelevant since the Highway 385 checkpoint was irregularly staffed.  But Agent Garcia testified that he and his colleagues will work a full shift at that checkpoint when assigned to it, and one shift runs from 7 a.m. to 3 p.m.  The district court thus correctly found that Agent Garcia was reasonably concerned by the time of day in which appellant was traveling.

[6]  The majority discount the driver's slouching because he was "only 5'7" tall" and therefore might not be visible above the driver's seat.  I disagree.  Much shorter drivers are clearly visible if they sit upright.  Agent Garcia's observation, found credible by the district court, should not be disbelieved at the appellate level.

12

First, the appellant had no constitutional right not to be stopped while driving along in blatant violation of traffic laws. The Fourth Amendment exclusionary rule is intended to combat unconstitutional actions by law enforcement officers, but its premise is the violation of a person's reasonable expectation of privacy. A person has no reasonable expectation that he will not be stopped for driving without license plates. By analogy, a man involved in a barroom brawl would have no constitutional privacy claim, and hence no ground for suppression, merely because he is arrested by an off-duty school-crossing guard rather than the local beat cop. *See, e.g.*, Fields v. City of South Houston, 922 F.2d 1183, 1188 (5th Cir. 1991) (question of officer's authority to arrest in § 1983 case turns on constitutional standard and not on Texas law governing arrest). The proper question is not whether Agent Garcia had authority to arrest for traffic violations but whether Agent Garcia had a reasonable suspicion of illegal smuggling activity based on all the conduct he saw.

Second, even if appellant had some constitutional right to be arrested only by a traffic law enforcement officer for driving without license plates, that violation may nevertheless be pertinent to the multifactor reasonable suspicion standard.[7] One

---

[7] Border Patrol agents often rely on the commission of relevant traffic violations as one ground of reasonable suspicion. See United States v. Garza, 544 F.2d 222, 224 n.3 (5th Cir. 1976) ("The turn from an incorrect lane is relevant not to show violation of traffic laws but to show peculiar driving patterns which support the officers suspicion that aliens might have entered the United

must credit Agent Garcia's common sense and his eight-plus years of experience when he inferred that the lack of legally-required plates, taken together with the other suspicious circumstances, suggested the possibility of alien or contraband smuggling. Surely, the absence of license plates in that location is as clear an indicator of an intent to elude identification as if the appellant had suddenly sped up on seeing a border patrol car. Appellant may as well have hoisted a flag saying, "Escape attempt underway!"

To ignore the absence of license plates, as the majority have essentially done, is a serious error. From now on, brazen smugglers can simply breeze by border patrol agents after removing their license plates. They will thus successfully hinder law enforcement and investigation[8] without any chance that countermeasures can be taken.

Part of the majority's unreasonable conclusion seems directed at Agent Garcia's failure to adhere to the niceties of legal language during his testimony. The majority footnotes his confusion between "mere suspicion" and "reasonable suspicion". Too

States illegally. Naturally, as in the present case, the two may be related."); see also United States v. Espinoza-Santill, 976 F. Supp. 561, 565-66 (W.D. Tex. 1997) (traffic violation is a factor a Boarder Patrol officer may consider in development of reasonable suspicion).

[8] Agent Garcia testified that he could not identify the van without license tags, and a post-arrest attempt to identify it through the vehicle identification number (VIN) was also fruitless.

14

much is made of this error even for a footnote.  As the majority knows, no suspicion is required for routine border or functional-equivalent searches,[9] while reasonable suspicion is the basis for stops by roving border patrols like this one.  <u>Brignoni-Ponce</u>, 422 U.S. at 884, 95 S. Ct. at 2582.  Agent Garcia became momentarily confused and then explained the distinction correctly.  The whole point of his testimony, however, was to outline the multiple grounds on which he had a <u>reasonable</u> suspicion that appellant was engaged in criminal activity.  Even more telling, the district court, which witnessed the testimony, made no mention of Agent Garcia's verbal mis-step in his findings.  If the district court did not consider this exchange significant in judging the witness's credibility, neither should we.

The Supreme Court has made it clear that "the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts."  <u>United States v. Sokolow</u>, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 243-44 n.13, 103 S. Ct. 2317, 2335 n.13 (1973)).  Not only does this case involve a congeries of arguably "innocent"--but certainly suspicious--circumstances, but in addition, the patently illegal act of driving without license tags under circumstances that

---

[9] <u>United States v. Cardenas</u>, 9 F.3d 1139, 1147-48 (5th Cir. 1993) (citing <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 538, 105 S. Ct. 3304, 3309 (1985)); <u>see</u> <u>also</u> 8 U.S.C. § 1357.

15

advertised the appellant's desire to evade identification by law enforcement agents. Taking these facts together, there was more than reasonable suspicion of illegal conduct.

A final word is in order about the government's presentation of this case. The government argued in the district court, but not in this court, that Agent Garcia's actions should be approved under the good faith exception to the exclusionary rule. This court has applied the good faith exception to a Border Patrol stop under similar circumstances. <u>United States v. DeLeon-Reyna</u>, 930 F.2d 396, 399 (5th Cir. 1994) (en banc). In <u>DeLeon-Reyna</u>, an officer's reasonable but mistaken belief that a truck bore false license plates was held innocuous under the good-faith exception. Here, as in <u>DeLeon-Reyna</u>, the agent's misperception about the significance of a traffic violation was reasonable and made in good faith. The government should be chastised for not raising this plainly controlling issue in defense of its conviction and our citizens' safety from illegal drug importation.

I respectfully dissent.