IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50156
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO VEGA,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
USDC No. P-99-CR-195
_____

April 24, 2001

Before JOLLY, MAGILL,* and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:**

    Alfredo Vega appeals the denial of his motion to suppress
evidence found in his vehicle after he was stopped by border patrol
agents heading north on Highway 385, about 35 to 40 miles from the
United States/Mexico border.  Because we believe the district court
properly found that the border patrol officers based their stop of
Vega's vehicle on reasonable factors, we affirm.

---

    *Circuit Judge of the Eighth Circuit, sitting by designation.

    **Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On June 10, 1999, Vega was indicted for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Vega moved to suppress the evidence--bundles of marijuana discovered during a search of his car--on the grounds that border patrol agents did not have reasonable suspicion to stop his vehicle. Following an evidentiary hearing, Vega's motion was denied.

Vega entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. He was sentenced to 42 months' imprisonment, followed by five years of supervised release. He has filed a timely notice of appeal.

At Vega's motion to suppress evidentiary hearing, the only witness was United States Border Patrol Agent Sam Pat Ferguson. Agent Ferguson had worked for the border patrol for thirteen years. According to his testimony, he and his supervisor, Nell Hernandez, were on Highway 385 on the morning of February 21, 1999. At this location, ten to fifteen miles north of the intersection with Highway 2627, they were in a desolate area approximately thirty five to forty miles north of the United States/Mexico border at La Linda. Because Highway 2627 to La Linda is the only junction off of Highway 385 before the entry to Big Bend National Park, any cars traveling north must have come either from Big Bend National Park or from La Linda. La Linda is not an official point of entry into the United States from Mexico; the La Linda bridge, which crosses

the Rio Grande, is privately owned and is blockaded from vehicular traffic with concrete barriers.

Ferguson and Hernandez parked on the west side of Highway 385, facing south, and set out on foot looking for bike tracks and other signs of illegal aliens. Sensor devices in La Linda had detected bicycle traffic that morning, which the Border Patrol suspected was a group of aliens coming north up Highway 385. Agent Ferguson testified that groups ride bicycles on the highway north from La Linda, and lay up during the day off the highway. Highway 385 is a well known corridor for drug and alien trafficking.

The agents were returning to their car when they saw a clean, green Hyundai coming around a curve heading north. Agent Ferguson testified that the driver of the vehicle, who turned out to be Vega, appeared startled upon seeing the officers and slowed his vehicle drastically. Vega made eye contact with the agents, but did not wave or otherwise acknowledge them in any way before proceeding, and regaining normal speed. Agents Ferguson and Hernandez decided to follow the vehicle, thinking that the circumstances and driver's behavior were somewhat suspicious.

The agents caught up with the Hyundai, at which time Vega, who appeared to be traveling at a normal rate of speed, slowed to about 40 miles an hour, 30 to 40 miles below the speed limit of 70 miles an hour. The agents followed four car lengths behind Vega while they ran a registration check on the vehicle.

3

While awaiting the registration information, the agents observed Vega to be preoccupied with the agents, constantly checking his rearview mirror and swerving the vehicle slightly each time he looked back. Agent Ferguson noted that Vega did not appear to be a tourist from Big Bend National Park because he was alone and had no visible camping gear. In addition, Agent Ferguson, who was familiar with local traffic, did not recognize Vega as a local.

The registration information revealed that the vehicle belonged to a Troy Croft from Midland, Texas. The suspicion of the agents was heightened because Vega's Hispanic appearance did not match the non-Hispanic name on the car registration. Agent Ferguson testified that, based on his experience, the name of the apprehended driver in narcotics incidents "fairly often" does not match the person to whom the vehicle is registered.[***] Agent Ferguson also testified that the Midland address alerted him, since the Midland/Odessa area is known as a pipeline for aliens and drugs. Vega was headed in the direction of Midland/Odessa.

At this time, Agent Ferguson testified that they knew "based on everything that we had seen that we needed to stop [Vega] and it was possible he was carrying contraband." When the agents activated their emergency lights, Vega threw on his brakes and jerked his vehicle to a stop very quickly, almost causing a

_____

[***]Agent Ferguson had been involved in approximately 50 to 100 smuggling stops in his career, and he testified that many of those stops involved drivers who had a Hispanic appearance in a vehicle with an Anglo name on the registration.

4

collision with the agents' vehicle. Agent Ferguson approached Vega's car and noticed the strong smell of fabric softener in addition to seeing a bag of potpourri on the seat. He asked Vega where he was from, and Vega replied that he was from Mexico. Agent Ferguson then asked Vega if he could search the truck, and Vega consented. Vega was arrested after Agent Ferguson found bundles of marijuana in the trunk.

                              II

Vega asserts on appeal that the district court erred in denying his motion to suppress. He argues the agents violated the Fourth Amendment because they lacked reasonable suspicion to stop him.

                              A

In reviewing the denial of a motion to suppress, the district court's factual findings are reviewed for clear error, and its legal conclusions, including whether reasonable suspicion existed for a stop, are reviewed de novo. United States v. Inocencio, 40 F.3d 716, 721 (5th Cir. 1994). In addition, the evidence presented during the suppression hearing is to be viewed in the light most favorable to the prevailing party--in this case, the government. Id.

A border patrol agent conducting a roving patrol has the reasonable suspicion necessary to make a temporary investigative stop of a vehicle if the agent is aware of specific articulable facts, together with rational inferences, that reasonably warrant

suspicion that the vehicle or its occupant is engaged in criminal activity. See United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). Reasonable suspicion is to be determined by considering the totality of the circumstances. See United States v. Cortez, 449 U.S. 411, 421-22 (1981). This is a fact-intensive inquiry, and "each case must be examined from the totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances." United States v. Villalobos, 161 F.3d 285, 288 (5th Cir. 1998). Factors to be considered in a reasonable suspicion analysis include: (1) proximity to the border; (2) information about recent illegal trafficking in aliens or narcotics in the area; (3) characteristics of the area; (4) usual traffic patterns; (5) the agent's previous experience in detecting illegal activity; (6) the behavior of the driver; and (7) particular aspects or characteristics of the vehicle. United States v. Brignoni-Ponce, 422 U.S. at 884-85. See also Inocencio, 40 F.3d at 722. Although the satisfaction of one single factor alone may be insufficient, the absence of a particular factor should not control a court's conclusion regarding reasonable suspicion. United States v. Cardona, 955 F.2d 976, 980 (5th Cir. 1992).

B

Based on the totality of the circumstances, we agree with the district court's finding that Agents Ferguson and Hernandez possessed reasonable suspicion that Vega and his vehicle were

6

engaged in possible criminal activity.  In particular, we believe a weighing of the <u>Brignoni-Ponce</u> factors validates the agents' stop of Vega.

We have characterized the first factor, proximity to the border, as the "paramount factor" to consider in determining reasonable suspicion.  <u>United States v. Aldaco</u>, 168 F.3d 148, 150 (5th Cir. 1999).  Proximity to the border gives the agents a reason to believe that the vehicle came from the border.  Generally, a vehicle must be within 50 miles of the border for this factor to be met.  <u>Inocencio</u>, 40 F.3d at 722 n.6.

Vega has conceded that his vehicle was only 35 to 40 miles from the border at the time he was stopped.  Furthermore, Vega was driving north, away from the border, when he encountered the agents.  We have held that these two considerations support the reasonableness of an agent's suspicion in stopping a vehicle.  <u>See</u> <u>United States v. Zapata-Ibarra</u>, 212 F.3d 877, 881 (5th Cir. 2000), <u>cert.</u> <u>denied</u>, 2000 WL 1468443 (U.S. Oct. 30, 2000) (No. 00-6258). Vega argues that the agents had no reason to believe that he had recently crossed the border, as he could have come from Big Bend National Park on Highway 385, rather than from La Linda on Highway 2627.  Furthermore, Vega notes that he could not have crossed the barricaded bridge at La Linda in his car.  He also asserts that his vehicle was clean, showing no signs that it had crossed the border at a low-water crossing.

This court has found the proximity element satisfied even when the agents had no evidence suggesting that the vehicle had actually crossed the border. Inocencio, 40 F.3d at 722 (formulating the inquiry as "whether an arresting agent could reasonably conclude that a particular vehicle originated its journey at the border."). Agent Ferguson testified that, in his experience, individuals often transport illegal contraband across the border and deliver it to a waiting vehicle in the United States. Because these vehicles often park on a paved road to await the deliveries, the lack of dust on the vehicle is not inimical to the belief that it could be carrying contraband. Vega was within fifty miles of the border, on a road that could have come only from either a private, barricaded border or a national park, also located on the border. The district court correctly found that a reasonable agent could conclude that Vega's journey originated at the closest border. We thus agree that the first, and paramount, Brignoni-Ponce factor is satisfied in this case.

The fact that the agents were at that spot on Highway 385 because there had been recent "hits" on sensor intrusion devices indicating bicycle traffic near the border south of their location also supports the agents' suspicion that Vega might have come from the border at La Linda. Vega argues that the sensors indicated bicycle traffic, not automobile traffic, and thus, this information could not have affected the officer's suspicion of his vehicle. Vega's vehicle, however, could have been the "waiting vehicle" for

8

contraband transported by those individuals who set off the sensor intrusion devices. Thus, the suspected illegal activity at La Linda that morning contributed to the reasonableness of the agents' suspicion.

The third and fourth factors, characteristics of the area and traffic patterns, also weigh in favor of the agents' finding of reasonable suspicion. The district court noted that Highway 385, where Vega was first observed and stopped, runs from Big Bend National Park, which is located on the border, to Marathon, Texas. The court further found that most of the traffic on this road is local traffic or tourist traffic coming in or out of Big Bend, although Agent Ferguson testified that the other highway into Big Bend, Highway 118, is more heavily traveled by tourists. Agent Ferguson testified that he did not recognize Vega as a local, and that Vega did not appear to be a tourist from Big Bend because he was alone and had no visible camping gear. Although Vega noted that there are hotels located in Big Bend, the fact that Vega was traveling alone and was not obviously a tourist added to the agents' reasonable suspicion of Vega.

Highway 385 is also known for being a major corridor for alien and narcotics smuggling. A road's reputation as a smuggling route contributes to the reasonableness of an agent's suspicion. See United States v. Nichols, 142 F.3d 857, 867 (5th Cir. 1998). In United States v. Rodriguez-Rivas, 151 F.3d 377, 380 (5th Cir. 1998), this court specifically noted that the record revealed that

"U.S. Highway 385 is frequently used by smugglers in an attempt to avoid the regularly-manned checkpoint on U.S. Highway 67." The district court recognized this in Vega's suppression hearing, and Agent Ferguson testified that he was aware of the road's reputation.

Another factor, the previous experience of the agents, also supports the reasonableness of the agents' suspicion in this case. The district court noted that Agent Ferguson has worked for the United States Border Patrol for thirteen years, while Agent Hernandez has been an agent for twelve years. The district court further noted that Agent Ferguson has been involved in somewhere between fifty and one hundred smuggling cases in the area. Vega does not question the experience of these border patrol agents-- thus, this factor is properly considered as support for the agents' stop of Vega's vehicle. See Aldaco, 168 F.3d at 151-52.

Vega's behavior also contributes to the reasonableness of the agents' suspicion. Agent Ferguson testified that Vega appeared startled upon seeing the agents, slowed his car drastically, and failed to acknowledge them after making eye contact. Furthermore, while the agents were following him, Vega slowed down from 70 miles per hour to approximately 35 or 40 miles per hour. In general, Vega appeared preoccupied with the agents, constantly checking his rearview mirror, and swerving his vehicle slightly when he would check his rearview mirror.

We recognize that the failure of a driver to make eye contact with officers cannot support an officer's reasonable suspicion. See United States v. Chavez-Villareal, 3 F.3d 124, 127 (5th Cir. 1993). However, we have held that an individual's "noticeable deceleration in the presence of a patrol car can contribute to reasonable suspicion, even though drivers often slow when they see law enforcement personnel." Villalobos, 161 F.3d at 291. Here, Vega slowed drastically when the agents began following him, to a point thirty to forty miles below the posted speed limit. While repeatedly looking into a rearview mirror is not suspicious conduct when it is the result of an officer's actions, for instance, if the patrol car is "tailgating" the vehicle, see United States v. Jones, 149 F.3d 364, 370-71 (5th Cir. 1998), Vega repeatedly looked into the rearview mirror when Agents Ferguson and Hernandez were following four car lengths behind his vehicle. This, combined with the drastic reduction in speed, contributes to the agents' reasonable suspicion.

The district court also considered other factors, including the fact that Vega's Hispanic appearance was incongruous with the non-Hispanic name on the vehicle's registration. This court has affirmed the use of this incongruity as a factor supporting the reasonableness of an agent's suspicion. United States v. Morales, 191 F.3d 602, 605 (5th Cir. 1999), cert. denied, 120 S.Ct. 1211 (2000). The district court also noted that Agent Ferguson found it suspicious that Vega's vehicle was registered in Midland, given his

11

knowledge that Midland often serves as a staging point for illegal trafficking. These factors, combined with the <u>Brignoni-Ponce</u> factors discussed above, all support the reasonableness of the agents' suspicion in this case.

III

In conclusion, we acknowledge that several of the factors that contribute to reasonable suspicion are commonplace occurrences and reactions that might apply to innocent citizens, especially when considered singularly. But when all of these factors are considered of one piece, the outline of a picture begins to emerge, especially to the eyes of trained law enforcement officers, which create -- not probable cause -- but reasonable suspicion. This is the case here.

We thus agree with the district court that, based on the totality of the circumstances and, in particular, the <u>Brignoni-Ponce</u> factors, Agents Ferguson and Hernandez possessed sufficient reasonable suspicion to warrant their stop of Vega's vehicle. The rulings and the judgment of the district court are therefore

A F F I R M E D.

12